[Crim. No. 12179.   Second Dist., Div. One.   Aug. 31, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JESSE RIVERA DUARTE, Defendant and Appellant.

26

Robert A. Doyle, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Gordon Ringer, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was charged with possession of heroin (§ 11500, Health & Saf. Code) and a prior federal narcotic felony conviction. The matter was submitted to the trial court on the transcript of the testimony taken at the preliminary hearing. No additional evidence was offered and defendant did not testify. He was found guilty as charged and the prior conviction found to be true. Defendant appeals from the judgment.

Deputies Trujillo and Kennerly were assigned to the narcotic detail; Deputy Trujillo had been a narcotic officer for approximately seven years and had participated in several hundred arrests involving narcotics and their illegal use. Around 7 p.m. on May 10, 1965, the deputies went to a residence on South Clela with a warrant of arrest for a violation of parole on a narcotics conviction for one Lopez; Lopez' car was parked in front. After being told by his mother that Lopez was not home, the deputies left, returning about

7:40 p.m.; the car was gone so they cruised around the area and finally found it parked near the intersection of Olympic and Woods. Defendant's wife was on the driver's side; defendant was seated on the passenger side. Deputy Trujillo knew defendant; he knew of defendant's prior conviction for sales of heroin; also he had previously arrested him for illegal narcotics use on which defendant was then awaiting trial. Defendant had the door of the car open, and standing on the sidewalk near him was a person whom Deputy Trujillo knew as Don Perez. He had previously arrested Perez for narcotics violations; on Perez' arm he saw what he believed to be a puncture wound. As they approached the vehicle, Deputy Kennerly saw Perez putting something to his mouth; he grabbed Perez' hand and attempted to pull it from his mouth. At the same time Deputy Trujillo observed defendant reach to the top of his trouser pocket and "restrained" him, grabbed his hand and reached into defendant's right trouser pocket. He pulled out a prophylactic containing 3 grams of heroin. Deputy Trujillo testified that because of his long experience as a narcotic officer, his knowledge that the automobile in which defendant was seated was one used by a person being sought by him on a warrant for a parole violation on a narcotic conviction and his knowledge of both Perez and defendant, Perez' conduct, upon seeing the deputies, indicated to him that Perez was attempting to swallow a narcotic; and when, at the same time, defendant reached for his trouser pocket, he formed the opinion that defendant, too, was trying to conceal or dispose of a narcotic by swallowing it.

Appellant claims that the discovery and seizure of the heroin in his pocket was the result of an exploratory search made without reasonable cause for his arrest.

In the absence of a warrant, a peace officer may arrest a person whenever he has reasonable cause to believe that the person to be arrested has committed a felony. (§ 836, Pen. Code; *People* v. *Torres,* 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823]; *People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967]; *People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) "To constitute probable cause for arrest, a state of facts must be known to the officer that would lead a man of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person arrested is guilty." (*People* v. *Hillery,* 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208]; *People* v. *Stewart,* 62 Cal.2d 571, 577-578 [43 Cal.Rptr. 201, 400 P.2d 97]; *People* v. *Cockrell,* 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116].)

■ The factual basis supporting probable cause is clearly apparent. Deputy Trujillo, long experienced as a narcotic officer, had participated in several hundred narcotic arrests; he was well acquainted with the common methods employed among users to dispose of and conceal contraband, one of which is to swallow the narcotic. He knew that the car in which defendant was seated belonged to a man for whom he had a warrant for a parole violation pertaining to a narcotics conviction; he knew Perez, the person talking to defendant, as a narcotics user whom he had previously arrested for narcotics violations; he knew defendant to be a narcotics user who had previously been convicted of heroin sales and that both defendant and Perez were then awaiting trial for recent arrests for narcotics which he had made. Thus, when Perez, upon seeing the deputies, put something in his mouth, defendant's motion of reaching to the top of his right trouser pocket, which in the absence of suspicious circumstances might have been no more than an ordinary gesture, took on the appearance of a furtive act. ''A thorough review of the decisions in this state reveals that the courts have sustained arrests without warrants where under suspicious circumstances, the individual arrested performs a furtive act or movement in the presence of the arresting officer [citations].'' (*People* v. *Tyler,* 193 Cal.App.2d 728, 732 [14 Cal.Rptr. 610].) The deputy's previous experience and the information known to him at that time, and the circumstances surrounding defendant's motion to his front trouser pocket, supported a rational belief that a public offense (possession of a narcotic) was being committed in Deputy Trujillo's presence. (*People* v. *Green,* 183 Cal.App.2d 736, 739 [7 Cal.Rptr. 235]; *People* v. *McMurray,* 171 Cal.App.2d 178, 185 [340 P.2d 335]; *People* v. *Almarez,* 190 Cal.App.2d 380, 382-383 [12 Cal.Rptr. 111]; *People* v. *Pendarvis,* 178 Cal.App.2d 239, 240-241 [2 Cal.Rptr. 824]; *People* v. *Poole,* 174 Cal.App.2d 57, 60 [344 P.2d 30].) ■ Restraining defendant by grabbing his hand, in effect, constituted an arrest. The deputy's substantially contemporaneous search of defendant's trouser pocket was reasonable as being incident to a lawful arrest. (*People* v. *Boyles,* 45 Cal.2d 652, 655 [290 P.2d 535].)

Appellant says that the deputy's testimony as to what Perez' ''conduct . . . indicated'' to him, and his opinion that he (defendant) was trying to dispose of a narcotic by swallowing it, constituted a conclusion and opinion which only an expert could give, and it was error for the court to

admit it. ▮ The arrest having been made without a warrant, the burden of showing justification therefor was on the prosecution. (*Tompkins* v. *Superior Court,* 59 Cal.2d 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113] ; *People* v. *Haven,* 59 Cal.2d 713, 717 [31 Cal.Rptr. 47, 381 P.2d 927].) "Since the court and not the officer must make the determination whether the officer's belief is based upon reasonable cause, the officer must testify to the facts or information known to him on which his belief is based. [Citations.]" (*People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535] ; *People* v. *Ramirez,* 185 Cal.App.2d 301, 308 [8 Cal.Rptr. 184].) ▮ Reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that ordinarily would be admissible on the issue of guilt. (*People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535] ; *People* v. *Luke,* 233 Cal.App.2d 793, 797 [43 Cal.Rptr. 878].) Thus, it was entirely proper, in response to the court's question, "What did the conduct you have ascribed to him indicate to you?" for the deputy to say that he believed that Perez was attempting to swallow a narcotic, and when defendant reached for his trouser pocket he "formed the opinion that he was trying to possibly do the same thing by removing maybe narcotics from his pocket and also attempting to swallow it." Proper, too, was the court's query, "All the factors led you to entertain a belief— . . . that the defendant was trying to conceal or dispose of a narcotic?" and the deputy's answer, "That is correct."

▮ The significance to the deputy of what he observed, the factors he considered in forming his belief, and his state of mind relative thereto and his opinion formed thereon are all elements relevant and necessary to the issue of probable cause.

▮ We detect an inference that the trial judge should have specifically limited certain portions of Deputy Trujillo's testimony to "probable cause." Of course, defendant's guilt in the crime of possession of heroin was established by the testimony of the deputy that upon defendant's arrest he found 3 grams of heroin on defendant's person in his right trouser pocket; it is then obvious that all of the evidence relating to what occurred prior to defendant's arrest was offered on the issue of probable cause. There simply was no reason for formally limiting the testimony, for the evidence was given on the preliminary hearing to the magistrate and the same was submitted to the court sitting without a jury.

▮ Appellant says that "character evidence may only be

introduced first by the defendant," thus, it was reversible error to permit the deputy to testify concerning his prior arrest and narcotics conviction. The evidence shows that defendant's prior arrest and conviction were revealed by the deputy as part of his knowledge of defendant on the issue of probable cause. The deputy was justified in taking into account the past conduct, character and reputation of the defendant in determining whether he had reasonable cause to arrest him. (*Farnsworth* v. *Cote*, 199 Cal.App.2d 762, 767-768 [19 Cal.Rptr. 45]; *People* v. *Wickliff*, 144 Cal.App.2d 207, 212-213 [300 P.2d 749].) Thus, the testimony of the deputy that he knew prior to arresting defendant that he had been convicted of possession of heroin was proper in furtherance of proof of probable cause. (*People* v. *Escobosa*, 179 Cal.App.2d 751, 755 [3 Cal.Rptr. 917]; *People* v. *Coblentz*, 229 Cal.App. 2d 296, 301 [40 Cal.Rptr. 116].) Actually the deputy remained silent concerning defendant's past arrest and conviction until the court asked him what defendant's conduct indicated to him, whereupon he started to answer, "Knowing Mr. Duarte and also Mr. Perez—," but was interrupted by the court's further inquiry as to what he meant by "knowing." It was then the deputy testified that he had arrested defendant in the past for illegal narcotic use and that he was presently awaiting trial; the court continued, "What did you know at that time about Mr. Duarte's record from the past?" and the deputy answered that defendant had been convicted for sales of heroin and "we knew this at that time." ▇ Inasmuch as the court must consider all of the facts and circumstances known and presented to the officer at the time he was required to act (*People* v. *Hollins*, 173 Cal. App.2d 88, 92 [343 P.2d 174]), the court was justified in making inquiry for the purpose of developing all of the facts relative to the issue of probable cause (*People* v. *Hambrick*, 162 Cal.App.2d 239, 243 [327 P.2d 570]; *People* v. *Lancellotti*, 147 Cal.App.2d 723, 730 [305 P.2d 926]), and eliciting or clarifying testimony relative to defendant's past conduct and reputation then known to the arresting officer. (*People* v. *Wickliff*, 144 Cal.App.2d 207, 212-213 [300 P.2d 749].) ▇ In any event, no objection was interposed to the court's questions nor was any motion to strike subsequently made, either at the preliminary hearing or when the cause was submitted to the trial court. A judge's examination of a witness may not be assigned as error where no objection was

made at the time. (*People* v. *Corrigan,* 48 Cal.2d 551, 558 [310 P.2d 953].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 25, 1967.