EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JESÚS DÍAZ DÍAZ, acusado y apelante.

*Número:* CR-72-11 *Resuelto:* 25 de septiembre de 1974

536

P. *Roldán Figueroa* y *Frances Berríos Agosto,* abogados del apelante; *Gilberto Gierbolini, Procurador General,* y *Rurico E. Rivera Rivera, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR MARTÍN emitió la opinión del Tribunal.

El apelante fue sentenciado a cumplir de un año a un año y seis meses de presidio al habérsele encontrado culpable, por un jurado, del delito de robo.

La prueba presentada por El Pueblo consistió en el testimonio del perjudicado y de ciertas prendas pertenecientes al perjudicado que fueron entregadas voluntariamente por el acusado a un policía que se personó en su casa al día siguiente de los hechos. La prueba de la defensa consistió en el testimonio del acusado-apelante y el de un testigo de reputación. El perjudicado declaró que el apelante y otra persona co-acusada(¹) por el mismo delito se le acercaron al llegar al portón de su casa en horas de la madrugada, le invitaron a tomar una cerveza a un bar cercano que resultó estar cerrado, le preguntaron si tenía dinero, contestándole él que aún no había cobrado, y de momento le agarraron doblándole un brazo hacia atrás, y le quitaron una sortija de oro, una cadena de oro con medalla que llevaba colgada al cuello, un aro de matrimonio de oro, un reloj y cuatro billetes de lotería. Dijo que el apelante le quitó el reloj y los billetes de lotería y que el co-acusado le quitó las otras prendas. Manifestó también que fue amenazado de que le iban a "asegurar bien seguro" si decía algo de lo sucedido a la policía. Manifestó que fue con un policía al otro día donde el apelante y que éste le entregó las prendas al policía.

El apelante dio otra versión sobre los hechos. Declaró que el perjudicado le había citado junto al co-acusado para ir al río a hacer "fresquerías". Que él hizo "fresquerías" con el perjudicado y que, no teniendo éste dinero, le dio unas prendas, para que las retuviera hasta el próximo día cuando habría de recobrarlas mediante la entrega de diez dólares. Dijo que lo mismo ocurrió con el co-acusado. Admitió que guardó las pren-

---

(¹) El juicio del acusado se celebró por separado.

das en su casa y que al otro día, al aparecer el perjudicado acompañado de un policía, entregó las prendas al policía.

Al presentar las prendas en evidencia, el fiscal manifestó al tribunal que el policía que recibió las prendas sería prueba acumulativa y lo ponía a la disposición de la defensa. La defensa quiso entrevistar al policía pero éste no se encontraba en el tribunal por lo que solicitó que se entendiera que de haberse presentado la prueba sería adversa al Pueblo. El tribunal ofreció dar las instrucciones pertinentes al jurado. El apelante alega la comisión de los seis errores que se discuten a continuación:

"PRIMER ERROR: Erró el Honorable Tribunal al dar instrucciones al Jurado en el sentido de que cuando se comete un delito de robo usando violencia éste debe conllevar algún uso de fuerza como algún golpe, algún apretón, algún pinchazo, doblarle un brazo, un cantazo, y que eso es lo que hace el robo, máxime cuando la única prueba de violencia en el caso era que el acusado le había doblado un brazo al perjudicado."

Arguye el apelante que el doblar un brazo no es la "violencia" que contempla el delito de robo, como elemento esencial del mismo, en ausencia de intimidación. Véase: 33 L.P.R.A. secs. 851–852.

 Este planteamiento es a todas luces frívolo. ¿Pretende el apelante que se cause una herida grave para poder entenderse que hay "violencia"? En el texto en inglés del Art. 238 del Código Penal (33 L.P.R.A. sec. 851), que prevalece sobre el texto en español, *Pueblo* v. *Echevarría Lazú,* 95 D.P.R. 556 (1967); *Pueblo* v. *Zayas,* 72 D.P.R. 18 (1951); *Pueblo* v. *Pelliccia,* 53 D.P.R. 591 (1938); *Pueblo* v. *Belardo,* 50 D.P.R. 512 (1936); *Pueblo* v. *Bermúdez,* 75 D.P.R. 760, 766 (1954); *Pueblo* v. *Colón Rosa,* 96 D.P.R. 601, 606 (1968), se utiliza la palabra *"force"* que significa "fuerza". Nadie puede válida e inteligentemente argumentar que el "doblar un brazo" no constituye un "uso de fuerza". Ya en *Pueblo* v. *Del Valle,* 91 D.P.R. 174 (1964), a la pág. 180, afirmamos que un

empujón o "empellón" es suficiente "violencia" para el delito de robo. Cualquier uso de fuerza o agresión que tenga o pueda tener el efecto de lograr que una persona se desprenda de los bienes de su pertenencia o de los que tiene en su posesión es suficiente para constituir la "violencia" requerida por el Art. 238.

"SEGUNDO ERROR: Erró el Tribunal al declarar culpable y convicto al acusado a base de un veredicto contrario a la prueba ya que de acuerdo con la evidencia presentada por el Fiscal no probó su caso más allá de duda razonable."

■ En este señalamiento de error se nos pide intervenir con la apreciación que de la prueba hicieron los juzgadores de hechos. El jurado, conforme a su facultad, ponderó y analizó la prueba presentada por ambas partes y dirimió las contradicciones entre los testigos de cargo y descargo, concediéndole credibilidad a los testigos de cargo y convenciéndose más allá de duda razonable de la culpabilidad del apelante. El examen que hemos hecho de los testimonios prestados en este caso nos convence de que no debemos intervenir con la apreciación justiciera de los hechos hecha por el jurado. No se nos ha demostrado la existencia de error claro y manifiesto, prejuicio, insuficiencia de prueba o parcialidad.

"TERCER ERROR: Erró el Tribunal al no dar las correspondientes instrucciones a los señores del Jurado al decretar los recesos conforme lo que disponen las Reglas 132 y 138 del Procedimiento Criminal de Puerto Rico." [2]

La Regla 132 de Procedimiento Criminal requiere que cada vez que el tribunal "*suspenda*" la sesión, debe advertir a los

---

[2] No discutimos la Regla 138 porque, aunque mencionada en el apuntamiento de error, no se discute ni parece haber controversia sobre ella.

La Regla 138 expresa: "Durante el transcurso del juicio, y antes de someterse la causa al jurado, el tribunal podrá permitir que los jurados se separen, o disponer que queden bajo la custodia del alguacil, quien prestará juramento de mantenerlos juntos hasta la próxima sesión del tribunal, y de no consentir que nadie, incluso él mismo, les hable o se comunique con ellos, acerca de ningún particular relacionado con el juicio, y de regresar con ellos al tribunal en la próxima sesión."

jurados: (1) que no deben conversar entre sí, ni con otras personas sobre ningún particular relacionado con el proceso, y (2) que no deben formar ni expresar juicio alguno sobre el proceso, hasta que la causa les sea sometida definitivamente a su deliberación.

■ El propósito de estas advertencias o instrucciones al jurado es asegurarle al acusado un juicio justo e imparcial ante jurados que no tengan sus mentes prevenidas. Véase: *Pueblo* v. *Miranda Matta*, 88 D.P.R. 822, 825 (1963).

Los incidentes procesales que motivan este señalamiento de error son los siguientes:

(1) El juez de instancia decretó un "receso" a las doce del mediodía hasta la 1:30 de la tarde. Antes del "receso" advirtió al jurado: "no comenten el caso entre sí, ni harán comentarios sobre el mismo". (T.E. pág. 49.) El abogado del acusado, quien también lo representa en apelación, no objetó ni impugnó por insuficientes las advertencias al jurado en ese momento ni en ningún momento del juicio.

(2) A las cuatro de la tarde, el juez de instancia "suspende" la sesión hasta el otro día a las nueve de la mañana. En esta ocasión las instrucciones del juez de instancia fueron las siguientes: ". . . que no empiecen ustedes a comentar el caso, ni a discutir el caso, ni permitan que persona alguna se les acerque a hablarles del particular." Tampoco hubo objeción del abogado del apelante en esta ocasión.

■ Puede decirse que en ambas ocasiones la admonición no fue enteramente de acuerdo con la Regla 132. Los jueces de instancia deben cumplir con la Regla 132 cada vez que se decrete un receso, o que se suspenda la sesión hasta otro día. (³) Tales advertencias deben cubrir completa y claramente

---

(³) En California, de donde procede nuestra Regla 132 (véase Historial Regla 132), se ha interpretado la regla equivalente, que es la Sec. 1122 del Código Penal de California, en forma limitativa requiriéndose allí dichas advertencias sólo cuando se suspende el juicio hasta otro día pero no para

las dos exigencias que impone la Regla 132. (⁴)

■ Sin embargo, la omisión de dichas advertencias o su emisión en forma incompleta no es causa de revocación, a menos que el acusado hubiere advertido oportunamente al tribunal del incumplimiento con la regla y el tribunal lo hubiere desoído, o se demostrare que tal incumplimiento causó perjuicio al acusado. *People* v. *Moore*, supra; *People* v. *Fairchild*, supra; *People* v. *Jones*, 62 Cal. Rptr. 304 (1967); *People* v. *Gastelum*, 46 Cal. Rptr. 743 (1965); *People* v. *Witt*, 170 Cal. 104 (1915); *People* v. *McKeehan*, 105 Pac. 273, 11 Cal. App. 443 (1909); *People* v. *Coyne*, 116 Cal. 295 (1897); *People* v. *Colmere*, supra. Véanse: *Pueblo* v. *González Olivero*, 100 D.P.R. 737 (1972); *Pueblo* v. *Goitía*, 41 D.P.R. 941 (1931); *People* v. *Williams*, 275 P.2d 513 (1954). El apelante no objetó las advertencias incompletas del juez de instancia ni nos ha demostrado que resultaron perjudiciales a su causa. No procede, por tanto, la revocación.

"CUARTO ERROR: Erró el Tribunal al negarse el Honorable Juez a excluir de la Sala al perjudicado en el caso cuando la defensa hizo tal solicitud porque se proponía hacer un planteamiento que éste no debía ser frente al perjudicado."

■ Previo al comienzo de la insaculación del jurado, la representación legal del apelante pidió que se excluyera al perjudicado para hacer un planteamiento porque entendía que la presencia del perjudicado afectaría adversamente al apelante. El tribunal denegó esa solicitud.

No vemos abuso de discreción en la negativa del tribunal.

---

recesar durante el mismo día. *People* v. *Moore*, 93 Cal. Rptr. 447 (1971); *People* v. *Fairchild*, 62 Cal. Rptr. 535, 540 (1967); *People* v. *Colmere*, 23 Cal. 632, 634 (1863). Lo que allí ocurre es que la disposición procesal aludida usa el concepto *adjournment*, el cual se ha interpretado allí que no se refiere a recesos decretados durante el mismo día.

(⁴) En *Pueblo* v. *Goitía*, 41 D.P.R. 941 (1931), el tribunal dio al jurado instrucciones cuidadosas en el primer receso. En recesos posteriores se limitó a decir "Se hace al jurado la advertencia de ley." Allí dijimos que tal advertencia general era suficiente en recesos posteriores luego de haber dado instrucciones detalladas en el primero. Debe entenderse revocado ese pronunciamiento.

El apelante no expuso razones por las cuales habría de perjudicarse por la presencia del perjudicado al hacer un planteamiento de derecho antes del comienzo del juicio.

Lo inmeritorio de este apuntamiento de error resulta más evidente cuando pretende fundamentar *en apelación* la razonabilidad de su petición al expresar que el "planteamiento" se refería a su "interés en presentar prueba sobre la condición de homosexual del perjudicado". La "justificación" para ello no fue explicada al tribunal de instancia. No se cometió el error aludido.

"QUINTO ERROR: Erró el Tribunal al declarar sin lugar la Moción de Reconsideración radicada por el acusado a pesar de que había fundamento de peso a su favor."

No tenemos conocimiento de la moción de reconsideración a que se refiere el apelante pues ni la discute en su alegato ni consta en autos. Si el apelante se refiere a las varias solicitudes que hizo su abogado al tribunal de instancia en el sentido de que excluyera al perjudicado del salón de sesiones mientras discutía algún planteamiento, lo dejamos resuelto en su contra al discutir el cuarto señalamiento de error.

"SEXTO ERROR: Erró el Tribunal al negarse a dar instrucciones al jurado en el sentido de que no tomaran en cuenta lo manifestado por el Fiscal de que la declaración del policía Bezares era prueba acumulativa, y además de que la prueba que se suprime voluntariamente se presume que de ofrecerse resultaría adversa."

En los inicios del juicio el juez de instancia quedó apercibido de que uno de los testigos de cargo, cuyo nombre y dirección constaban al dorso del pliego acusatorio, no estaba presente. Se trataba del policía Gilberto Bezares. El juez inquirió del ministerio público si utilizaría tal testigo y el fiscal manifestó: "Podemos empezar a la mejor discreción suya." (T.E. pág. 8.) La representación legal del apelante no objetó ni hizo observación alguna al respecto.

. Una vez termina el desfile de la prueba de cargo, el fiscal manifestó, en presencia del jurado: "Señor Magistrado, con permiso suyo y con mucho respeto. El otro testigo que obra al dorso de la acusación es el policía Bezares, Placa 3884, sería *prueba acumulativa*. Lo ponemos a disposición de la defensa. Sometemos la evidencia, antes así admitida en evidencia, y ése es el caso del Pueblo de Puerto Rico." (T.E. pág. 66.) (Énfasis suplido.) A renglón seguido, la defensa solicitó del tribunal que se le permitiera entrevistar al policía Bezares y entonces se suscita el siguiente incidente:

"Hon. Fiscal: Compañero, el Policía Bezares no está presente. Toda vez que el policía no está presente, Señor Juez, eso indica que no podría someter ninguna otra como prueba. Ése es el caso.

Hon. Juez: La defensa.

Lic. Roldán: Señor Juez, si me permite el Tribunal. La cuestión de haber anunciado al testigo como prueba acumulativa y no haberlo presentado que se entienda que de haberlo presentado le resultaría adverso.

Hon. Juez: Ya sobre ese particular el Tribunal va a dar las instrucciones pertinentes." (T.E. págs. 67–68.)

En el curso del examen directo del testigo de cargo, o sea, el supuesto perjudicado, surgió que al siguiente día de los alegados hechos punibles "un policía", acompañado del perjudicado, había recibido de manos del acusado "las prendas" que alegadamente le había sustraído al testigo. (T.E. pág. 23.)

El acusado admitió en la silla testifical que al siguiente día de los hechos imputádosle había entregado al policía Bezares las prendas aludidas. (T.E. pág. 83.)

En las instrucciones al jurado, el tribunal de instancia no hizo alusión alguna al policía Bezares ni al hecho de no haber aquél declarado. En consecuencia, el letrado del apelante solicitó instrucciones adicionales para que se advirtiera al jurado que el testigo policía Bezares, al no ser presentado por el fiscal, debía presumirse como evidencia adversa al caso del

Pueblo de Puerto Rico. El juez de instancia negó tales instrucciones.

La norma en estos casos la expusimos claramente en *Pueblo* v. *Flores Berty*, 92 D.P.R. 577 (1965), a las págs. 580–81: "Es bien conocida la regla de que el Fiscal no viene obligado a presentar en el juicio a todos los testigos que tengan conocimiento de los hechos, o a todos aquellos cuyos nombres han sido incluidos al dorso de la acusación [citas omitidas]. En muchas ocasiones los fiscales renuncian presentar testigos cuyos testimonios es evidencia de corroboración o acumulativa y cuando tales testigos renunciados *están presentes en corte y pueden ser utilizados por la defensa,* no surge presunción alguna adversa al caso del Pueblo. *Cuando el testigo renunciado no comparece a Corte, y dicho testigo tiene conocimiento esencial de los hechos,* su ausencia inexplicada da margen a que surja la presunción en contra del Pueblo y especialmente con mayor razón y fuerza si el Fiscal ha presentado prueba de inferior categoría para establecer su caso."(5) (Énfasis suplido.) En igual sentido puede verse: II Wigmore, *On Evidence* (3d Ed.), sec. 287, págs. 168–169.

En el presente caso el ministerio público presentó al perjudicado, quien fue testigo presencial de los hechos. El testimonio del policía Bezares ciertamente no hubiera tratado sobre hechos esenciales del caso. Su intervención se limitó a recibir las prendas de manos del acusado-apelante. Tanto el perjudicado como el acusado-apelante declararon que las prendas estaban en poder del acusado-apelante y que las mismas fueron entregadas al policía. La intervención del policía cierta-

---

(5) No se trata en este caso de la práctica que desaprobamos en *Pueblo* v. *Orona Merced,* 89 D.P.R. 336, 344–45 (1963), cuando el fiscal manifiesta que su evidencia renunciada "corrobora" los testigos de cargo que declararon.

Tampoco utilizó el fiscal el término "corroborar" en relación con su prueba no ofrecida, cumpliendo con *Pueblo* v. *Hernández Pérez,* 93 D.P.R. 182, 191 (1966), en el cual afirmamos que debía omitir usar tal palabra al referirse a la prueba que renunciaba por considerarla acumulativa.

mente no tiene relación con el hecho delictivo. Sería absurdo presumir que el testimonio del policía sobre la posesión de las prendas por el acusado sería adverso a la prueba del Pueblo, especialmente mediando la propia admisión del acusado-apelante sobre dicha posesión. Ésta era más bien prueba acumulativa de la declaración al respecto del mismo acusado-apelante. ¿Podría concebirse que el acusado-apelante pretendiera que el policía declarara sobre manifestaciones héchasle por el primero con respecto a su inocencia, las que evidentemente serían prueba de referencia? No se da la presunción en tal caso. El juez de instancia actuó conforme a derecho al negar las instrucciones solicitadas.

*Se confirmará la sentencia apelada.*