El Pueblo de Puerto Rico, apelado, *v.* Norman Batista Montañez, acusado y apelante.

*Número:* CR-82-11     *Resuelto:* 19 de octubre de 1982

*Margarita Carrillo* y *Víctor Meléndez Lugo*, División de Apelaciones, Sociedad para Asistencia Legal, abogados del apelante;

*Miguel Pagán, Procurador General Interino,* y *Justo Gorbea Varona, Procurador General Auxiliar,* abogados de El Pueblo.

El Juez Presidente Señor Trías Monge emitió la opinión del Tribunal.

Este caso plantea la delicada cuestión de si los hechos siguientes configuran el delito de robo o el de apropiación ilegal.

Un estudiante de dieciséis años salió de la escuela una tarde en compañía de su hermano. En el camino se le acercaron el apelante y otra persona. El apelante le pidió una peseta y el joven, tras responder que no tenía dinero, siguió andando. Poco después sintió que le arrancaron una cadena que llevaba al cuello. El tirón no fue fuerte. No fue golpeado ni empujado. Al principio creyó que se trataba de un juego de su hermano. El perjudicado se volvió y vio al apelante parado a pocos pies de él. Alguien le ordenó continuar su marcha. El joven obedeció.

El apelante fue apresado dos días después. Fue hallado culpable por tribunal de derecho, del delito de robo. Se le sentenció a cumplir una pena de ocho años de prisión. En alzada a este foro alega que erró el tribunal al calificar el delito.

El Art. 173 del Código Penal de 1974 (33 L.P.R.A. sec. 4279) dispone:

Art. 173. *Robo*

Toda persona que se apropiare ilegalmente de bienes muebles pertenecientes a otra, ya sustrayéndolos de su persona, o de la persona en cuya posesión se encuentre [*sic*], ya en su inmediata presencia y contra su voluntad, por medio de la violencia o de la intimidación, será sancionada con pena de reclusión por un término fijo de doce (12) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de veinte (20) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de ocho (8) años.

Esta disposición tiene por fuente inmediata el Art. 238

del Código Penal de 1937 (33 L.P.R.A. sec. 851), correspondiente al de 1902, en que también se decía:

> Entiéndese por robo el acto de apoderarse criminalmente de bienes muebles pertenecientes a otro . . . por medio de la violencia o de la intimidación.

Nuestro Código Penal de 1902 se fundó en el de Montana, que a su vez calcó el de California de 1872. El Art. 211 de este último proveía y provee:

> Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.

Las raíces de esta disposición son profundas y extensas. Examinemos las normas prevalecientes en el Derecho común inglés y en el Derecho actual de Estados Unidos. El problema consiste, en este pleito, en la definición del término "violencia". ¿Representa "violencia", para fines del delito de robo, el arrebatamiento de un bien mueble de la persona de un ser humano, sin resistencia de éste, por sorpresa y sin causarle daño?

La contestación en el Derecho común era generalmente que no. *Rex* v. *Steward* (1690) 2 East, Pleas of the Crown 702; *Rex* v. *Macauley* (1783) 1 Leach 287; *R.* v. *Baker* (1783) 1 Leach 290. Véanse: W. L. Clark & Marshall, *A Treatise on the Law of Crimes*, 6ta ed., Chicago, Callaghan & Co., 1958, pág. 782; W. Holdsworth, *A History of English Law*, 2da ed., London, Methuen and Sweet & Maxwell, 1937, Vol. VIII, pág. 304. De ofrecer el dueño alguna resistencia o de causársele algún daño a su persona o su ropa se estimaba, sin embargo, que había ocurrido violencia. *Rex* v. *Davies* (1787) 1 Leach 290n; *Rex* v. *Moore* (1784) 1 Leach 335; *Rex* v. *Horner* (1790) 1 Leach 291n; Clark & Marshall, *loc. cit.* La fuerza requerida para constituir violencia, en otras palabras, tenía que montar a algo mayor que la utilizada para apoderarse de la cosa mediante el simple arrebatamiento o arrancamiento (*snatching*).

Para entender la distinción, debe recordarse que el robo, concebido entonces en el Derecho inglés en forma análoga a la definición citada del Código de California, constituía un delito grave desde tiempos de Enrique II. Holdsworth, *op. cit.*, Vol. III, pág. 368. Era duramente castigado. A todas luces, los tribunales ingleses fueron desarrollando distingos para mitigar el rigor de la pena en ciertas circunstancias. Aun así, se resolvió que algunos tipos de apoderamiento súbito de cosas constituían robo. En *Rex* v. *Lapier*, 168 E.R. 263 (1784), se decidió que era robo y no hurto arrancarle un pendiente a una dama. Valga apuntar, no obstante, que se infligió daño a la oreja en tal caso. En *Rex* v. *Mason*, 168 E.R. 876 (1820), sin embargo, el ladrón le arrancó una cadena que la víctima llevaba al cuello, con la que aseguraba un reloj. Para arrebatarla, el ladrón tuvo que dar dos o tres tirones. Se resolvió que hubo que vencer la resistencia que representaba la cadena y que ello constituía la fuerza necesaria para cometer robo.

Al expresarse sobre el grado de fuerza implícito en el concepto de "robo", Blackstone escribió:

> . . . it is enough that so much force, or threatening by word or gesture, be used as might create an apprehension of danger, or induce a man to part with his property without or against his consent.[1] 2 *Jones' Blackstone Commentaries on the Laws of England*, San Francisco, Bancroft-Whitney Co., 1916, pág. 243.

Estos conceptos, con olvido usual de la norma sentada en *Rex* v. *Mason*, supra, y de la amplia expresión de Blackstone, pasaron a constituir la regla judicial o estatutaria prevaleciente hoy en Estados Unidos, con algunas excepciones. La norma general es que el arrebatamiento de una cosa por sorpresa a una persona no constituye robo. 4 *Wharton's Criminal Law*, 14ta ed., New York, The Lawyers' Co-

---

[1] En cuanto al tratamiento inglés moderno del robo y el hurto, véase "Theft Act 1968", 8 *Halsbury's Statutes of England*, 3ra ed., Londres, Ed. Butterworths, 1969, pág. 782 y ss.

operative Publishing Co., 1981, Sec. 480, págs. 68–69; Annot., *Purse Snatching as Robbery or Theft*, 42 A.L.R.3rd 1381 (1972). En Massachusetts, Kentucky y algunos otros estados, se sostiene que hechos análogos a los envueltos en el caso de autos, configuran el delito de robo.

*Commonwealth* v. *Jones*, 283 N.E.2d 840 (1972), es representativo de la regla minoritaria. El tribunal de última instancia de Massachusetts resolvió en este caso —el cual trataba del arrebatamiento, por sorpresa, de una cartera a una mujer, sin oportunidad de ofrecer resistencia— que "el grado de fuerza es impertinente, siempre que sea suficiente para obtener la propiedad de la víctima 'contra su voluntad' ". Pág. 843.

California ha aminorado también, por decisión judicial, la norma del Derecho común, aunque de modo distinto. En California, al igual que en la obra de Blackstone, se estima que el grado de fuerza requerido no es pertinente. Basta con utilizar la fuerza necesaria para efectuar el apoderamiento. La diferencia estriba en que el juzgador de los hechos está enteramente libre para escoger entre condenar por robo o por hurto mayor. *People* v. *Lescallett*, 176 Cal. Rptr. 687, 123 Cal.App. 3d 487 (1981); *People* v. *Roberts*, 129 Cal. Rptr. 529, 57 Cal.App. 3d 782 (1976); *People* v. *Church*, 48 P. 125 (1897). Véase: M. C. Bassiouni, *Substantive Criminal Law*, Illinois, C. C. Thomas, 1978, pág. 335.

En el caso presente, se da la situación interesante, aunque no singular, de que la institución que nos ocupa se halla en forma extremadamente parecida, tanto en el Derecho común como en el civil. La razón en este caso es que existe un tronco común.

El delito de robo era conocido en el Derecho romano, aunque no se le consideraba delito independiente. Estaba comprendido en el concepto general del *furtum*, (²) que significaba básicamente la apropiación ilegítima de una cosa.

---

(²) La palabra *furtum* en latín ("hurto" en romance) proviene del griego *fur*, que significa literalmente "el que lleva algo".

Se cometía el delito con sólo tocar la cosa, sin necesidad de llevársela. T. Mommsen, *Derecho Penal Romano*, trad. de P. Dorado, Bogotá, Ed. Temis, 1976, págs. 458–459; H. F. Jolowicz, *Historical Introduction to the Study of Roman Law*, 2da ed., Cambridge Univ. Press, 1952, págs. 172–173. Hacia fines de la República, *furtum* ya significaba apropiación por la fuerza y luego se empezó a castigar como delito de coacción. Recaía también desde entonces, como ahora, tan sólo sobre las cosas muebles. Mommsen, *supra*, págs. 459–460.

En el Derecho primitivo germánico el concepto del robo entrañaba el uso público de la fuerza. El hurto se amparaba en la clandestinidad. F. Puig Peña, *Derecho Penal*, 6ta ed., Madrid, Ed. Rev. de Derecho Privado, 1969, T. IV, Parte Especial, pág. 289; C. L. Von Bar, *A History of Continental Criminal Law*, New York, A. M. Kelley, 1968, pág. 70.

El concepto moderno del robo nació precisamente de esa interacción entre el Derecho romano y el germánico. La propia voz "robo" era desconocida en el latín clásico. Es en el latín vulgar, tras sufrir influencias germánicas, que surge el vocablo *"raubare"*, el que se extiende por las lenguas romances y proviene del antiguo alemán *"raubôn"*, que significa arrebatar, quitar con violencia.[3]

En Las Siete Partidas ya se habla separadamente de "hurto" y "robo" y se mezclan las corrientes romana y germánica. En la Partida VII, Tít. XIV, Ley I, se dice:

> Furto es malfetria que facen los homes que toman alguna cosa mueble agena ascondidamente sin placer de su señor, con entencion de ganar el señorio, ó la posesión ó el uso della. . . .
> *Las Siete Partidas del Rey Don Alfonso El Sabio*, Madrid, Ed. Atlas, 1972, T. III, pág. 607.

El Tít. XIII de la misma Partida habla de los robos, "una

---

[3] Uno de los términos en alemán moderno para "robo" es *"raub"*. *"Robbery"* y "robo" tienen, en consecuencia, etimología y connotación comunes.

manera de malfetria que cae entre furto et fuerza". Pág. 605.

El Art. 500 del Código Penal español vigente utiliza los mismos conceptos empleados en el Art. 211 del Código Penal de California y en el 173 de nuestro Código Penal. El Art. 500 del Código español provee que "Son reos del delito de robo los que, con ánimo de lucrarse, se apoderan de las cosas muebles ajenas, con violencia o intimidación en las personas o empleando fuerza en las cosas". "Violencia" significa simplemente "acometimiento material, empleo de fuerza física". Puig Peña, *op. cit.*, pág. 243; E. Cuello Calón, Derecho Penal, 13ra ed., Barcelona, Ed. Bosch, 1972, T. II, Vol. 2, Parte Especial, pág. 853; F. Hélie, *Pratique Criminelle des Cours et Tribunaux*, 6ta ed., París, Librairies Techniques, 1954, Vol. 2, pág. 423.

El Tribunal Supremo de España ha considerado como robo, arrancar las pantallas a una niña, causándole lesiones insignificantes, S. de 12 de julio de 1872; arrebatar la cartera a un transeúnte, S. de 22 de octubre de 1898; S. de 3 de mayo de 1971, Rep. Juris. Aranzadi, Núm. 2025; S. de 5 de abril de 1979, Rep. Juris. Aranzadi, Núm. 1613; S. de 21 de enero de 1970, Rep. Juris. Aranzadi, Núm. 29; y despojar súbitamente del reloj a alguien a quien el ladrón le ha preguntado la hora, sin que medie lesión, S. de 27 de febrero de 1950, Rep. Juris. Aranzadi, Núm. 456.

Todo texto debe interpretarse a la luz de las realidades específicas de la sociedad en que opera. Estimamos que la norma que mejor cumple las necesidades del Puerto Rico de hoy es la representada por *Rex* v. *Mason*, supra, la regla minoritaria estadounidense y las sentencias españolas citadas. Consideramos inaceptable distinguir entre grados de fuerza. [4] El robo es un delito contra la persona, más que

---

[4] Ello es contrario a la tendencia simplificadora representada por el Código Penal de 1974, que agrupa bajo "apropiación ilegal" diversidad de delitos desgajados de las parcas clasificaciones antiguas, a la par que trata separadamente el delito de robo. Tal tendencia se observa también en la legislación inglesa de 1968,

contra la propiedad. El valor de lo arrebatado no juega papel alguno. Se puede devolver lo robado y ello no borra el delito. *Jones' Blackstone Commentaries, loc. cit.* Tampoco ha constituido nunca elemento de este delito, como hemos visto, que se inflija daño corporal, por insignificante que sea, a la víctima. La clave está en la violación de la dignidad de la persona al despojársele de un bien mueble por medio de cualquier tipo de violencia o intimidación; en el uso de la fuerza contra la persona, aunque sea de orden tan súbito que no brinde al perjudicado oportunidad de resistirla. En *Pueblo* v. *Díaz Díaz*, 102 D.P.R. 535, 539 (1974), ya habíamos anticipado nuestro criterio, en *dictum* sobre este particular, al referirnos a la definición de "robo" bajo el Código de 1937. Afirmamos entonces:

> Cualquier uso de fuerza o agresión que tenga o pueda tener el efecto de lograr que una persona se desprenda de los bienes de su pertenencia o de los que tiene en su posesión es suficiente para constituir la "violencia" requerida por el Art. 238.

Por las consideraciones expuestas resolvemos que existe el robo por arrebatamiento en Puerto Rico, que el uso de la fuerza más leve posible basta para la comisión del delito y que la ausencia de lesión o aun de peligro para la víctima (Hélie, *loc. cit.*) o la falta de oportunidad de resistir

---

antes citada, y en las recomendaciones del Código Penal Modelo. American Law Institute, *Model Penal Code and Commentaries*, Philadelphia, Pennsylvania, The American Law Institute, 1980, Parte II, Arts. 222–223, págs. 95–277. El círculo se va cerrando. Se presencia el retorno, con entendibles variantes y excepciones, a la sencillez de otros tiempos. Tomamos nota, no obstante, que en Georgia se ha optado por crear por acción legislativa la categoría separada de robo por arrebatamiento (véase el tratamiento judicial de este estatuto en *Edwards* v. *State*, 164 S.E. 2d 120 (1968)) y que el Código Penal Modelo le ha añadido requisitos al delito de robo. *Supra*, Art. 222.1. Somos conscientes también de que la naturaleza de la fuerza empleada sigue afectando algunas sentencias en países donde priva el derecho civil. S. de 16 de abril de 1979, Rep. Juris. Aranzadi, Núm. 1640; S. de 3 de junio de 1975, Rep. Juris. Aranzadi, Núm. 2582; S. de 22 de noviembre de 1974, Rep. Juris. Aranzadi, Núm. 4433; S. de 4 de noviembre de 1974, Rep. Juris. Aranzadi, Núm. 4090; S. de 24 de mayo de 1974, Rep. Juris. Aranzadi, Núm. 2422; G. Maggiore, *Derecho Penal*, traducción del italiano por J. Ortega Torres, Bogotá, Ed. Temis, 1956, Vol. V, pág. 55.

la violencia no surten el efecto de reducir el delito a la condición de apropiación ilegal.

*Se confirmará la sentencia apelada.*